## GULF, C. & S. F. RY. CO. v. CARSON.

No. 12883.

Court of Civil Appeals of Texas. Fort Worth.

July 22, 1933.

Rehearing Denied Sept. 22, 1933.

W. D. Garnett, of Gainesville, and Terry, Cavin & Mills, of Galveston, for appellant.

Granville Jones and W. O. Davis, both of Gainesville, for appellee.

DUNKLIN, Justice.

This case grew out of a collision between a railroad car attached to a backing train of the Gulf, Colorado & Santa Fé Railway Company and an automobile traveling west on a public street in the city of Gainesville driven by K. R. Carson, son of plaintiff, Mrs. R. C. Carson, who was riding with him at the time of the accident. And this appeal has been prosecuted by the defendant Gulf, Colorado & Santa Fé Railway Company from a judgment in favor of the plaintiff for $150 damages to the automobile and $1,050 for personal injuries sustained by plaintiff as a result of the collision.

In answer to special issues, the jury found that the crew in charge of the backing train of tank cars were negligent in failing to have one of its number act as brakeman or watchman at the Belcher street crossing where the accident occurred, as said cars approached and entered that street, and that such negligence was the proximate cause of the collision; and further that the collision was not the result of an unavoidable accident. There were further findings that exonerated both the plaintiff and her son, who was driving the car, of the charges of contributory negligence in several particulars pleaded by the defendant; further that the damage done to plaintiff's automobile as the result of the collision was $150, and assessing plaintiff's damages for injuries sustained by her at $1,050.

Three assignments of error are presented here, in which complaint is made of improper argument by counsel for plaintiff. The argument complained of in the first of those assignments of error is shown in the following bill of exception, which was approved by the court:

"That while plaintiff's counsel, Granville Jones, Esq., was making his opening argument to the jury he used the following language:

"'Gentlemen, I am sure you have noticed the disadvantage an ordinary citizen is at, especially a poor widow woman, when she files suit against a corporation—'

"Defendant objected to said argument, and the Court instructed the jury not to consider said reference to 'a poor widow woman.' Defendant still reserved its exception.

"'Well, you have noticed the disadvantage any citizen is at in trying a suit against a great big corporation like the Santa Fé Railway Company.'

"'It is remarkable the extent to which they will go to beat a person out of what is coming to them.'

"'You have here this great big corporation, with a Claim Agent to hunt up and run down the witnesses, and keep them up to the lick log at the trial.' * * *

"'They (defendant) could have had switchman Wingert stay there and flag Belcher Street crossing until the cars got there, and then got on and rode down to the Katy switch, but this big railroad company can't be delayed two or three minutes when the safety of our citizens is at stake.' * * *

"Defendant duly objected to each and all of the above quoted arguments as and when made, because the same were inflammatory, prejudicial, and calculated to arouse the passions and prejudice of the jury against the defendant, and to appeal to and arouse their sympathies for and create a bias in favor of the plaintiff, and cause them to return answers to the special issues and a verdict against the apparent and great weight of evidence, or to render a verdict for damages in an excessive sum, and because the size of the defendant was wholly immaterial and irrelevant as was the financial condition of the plaintiff, as to which there was no evidence in record.

"After the court sustained defendant's objection to the first argument with reference to the disadvantage a poor widow woman was at in filing suit against a corporation, defendant still reserved its exception because said instruction did not and could not destroy the pernicious effect made on the minds of the jurors by the words already uttered, or remove the harm that had been done thereby towards depriving defendant of a fair and impartial trial under the law and the evidence. And that said arguments were not provoked by or in reply to any argument of defendant's counsel. That the failure of the Court to notice and correct said infractions under Rule 41, put defendant's counsel to the necessity of objecting, which had the effect of emphasizing said arguments and impressing them upon the minds of the jurors.

"That a motion to instruct the jury to disregard said arguments was made as to each at the same time objection was made.

"Said objections of defendant and motions to instruct the jury to disregard said arguments were each and all overruled by the Court, except as to the reference to 'a poor widow woman' made in the first argument.

"To which action and rulings of the Court in overruling each and all of defendant's objections and motions to instruct the jury to disregard, and the failure of the Court to notice and correct said infractions as and when made by plaintiff's said counsel, the defendant then and there in open court duly excepted."

The bill of exception upon which another assignment to improper argument is based reads as follows:

"That while plaintiff's counsel, W. O. Davis, Esq., was making his closing argument to the jury he used the following language:

" 'There is one strange thing, gentlemen, about this case. It shows the disadvantage that anyone labors under who has a controversy with a corporation. When this woman was carried to the Sanitarium suffering, bruised and bleeding—.'

"Defendant objected. The Court sustained the objection to the woman 'bleeding' and instructed the jury to disregard the same. Defendant still reserved exception.

" 'Mr. Garnett (defendant's counsel) says that Mrs. Carson discharged her doctor in about sixteen days, and that indicates she was not permanently injured. Has Mr. Garnett (defendant's counsel) never learned that in these times of depression, and want of money, when the country is full of tramps and men are without jobs—'

"Defendant objected. Sustained. Exception reserved.

" 'Don't he (Garnett, defendant's counsel), know that now people who really need a doctor sometimes don't have one because they don't have the money to pay him? That is frequently the case. The $28.50 doctor bill (owing by plaintiff to her physician, Dr. Clements) has never been paid. The poor woman (plaintiff) hasn't been able to pay it.'

"Defendant objected. Sustained as to statement 'the poor woman hasn't been able to pay it' and jury instructed to disregard. Exception reserved.

" 'That auto which was destroyed—it wasn't a Cadillac or it wasn't a Franklin—but it was a poor woman's auto.' Exception reserved.

" 'It cost her $600, but it was about two and a half years old and in good condition—but all she claims for that is $200.'

"Defendant objected. Sustained as to auto costing $600. Defendant reserves exception. Mr. Davis—'I am sorry I got off on that.'

" 'Now, she claims $2,700 damages because of personal injuries, the pain she has suffered, the loss of time, her inability to work, and discharge her household duties, not only now but in the hereafter—and I think that $2,700 is mighty low for that. Would you go through with what that poor woman has for $2,700?'

"Defendant objected. Overruled, except as to last question; objection sustained to last question. Exception reserved.

" 'It is a mighty serious thing for a woman to be injured like that woman, who has very little means to hire help.'

"Defendant objected. Sustained as to 'who has very little means to hire help.' Defendant reserves exception.

"The court (at conclusion of argument of W. O. Davis) 'Gentlemen, I instruct you not to consider the remarks of counsel about the woman (plaintiff) being poor and unable to pay a doctor and that she was bleeding when taken to the hospital.' "

The bill of exception upon which a third assignment is based shows that Mr. W. O. Davis, counsel for plaintiff, in his closing argument to the jury, made the following statements:

" 'Between the arrangement over the phone of Hiram B. Smith, Bug Hunter Smith (defendant's claim agent) and Dr. Thayer (defendant's local surgeon), they weren't concerned in the suffering of this woman. * * * '

"Defendant objected. Overruled. Exception reserved.

" 'But there they (Smith and Thayer) were, with this woman lying suffering in the sanitarium, talking over the phone about the law suit. Smith said, "Can you, Doctor, by any means get hold of the woman and examine her?" "Yes, I think I can," Dr. Thayer replied; and Dr. Thayer went around and got permission from Dr. Clements (plaintiff's physician) to go and thumb over this suffering woman.'

"Defendant objected. Overruled. Exception reserved.

" 'Would I (Davis) like to have a railroad doctor feel around over my wife, or would you like to have him feel around over your wife, or your mother? No, I wouldn't.'

"Defendant objected. Overruled. Exception reserved."

The bills of exception all show that counsel for defendant still reserved exceptions to those portions of the argument to which objection was sustained, notwithstanding those rulings.

It is our conclusion that the arguments sev-

eral times repeated even after the court had excluded them from the consideration of the jury, to the effect that plaintiff was "a poor widow woman," and also that she was at a disadvantage in a suit against "a great big corporation like the Santa Fé Railroad Company," were reasonably calculated to arouse bias in favor of plaintiff and prejudice against the defendant; and the fact that counsel for plaintiff persisted in the same course of argument contrary to the ruling of the court rendered its harmful effect all the more probable, and it is our conclusion that arguments of that character constitute reversible error. Among numerous authorities which support this conclusion we will cite the following: Barnes v. McCulloch (Tex. Civ. App.) 53 S.W.(2d) 89; Floyd v. Fidelity Union Cas. Co. (Tex. Com. App.) 24 S.W.(2d) 363; Houston, E. & W. T. Ry. Co. v. McCarty, 40 Tex. Civ. App. 364, 89 S. W. 805; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; Davis v. Hill (Tex. Com. App.) 298 S. W. 526; Green v. Crouch (Tex. Civ. App.) 57 S.W.(2d) 867; Woodrum Truck Lines v. Bailey (Tex. Com. App.) 57 S.W.(2d) 92; Robbins v. Wynne (Tex. Com. App.) 44 S.W.(2d) 946, and many other cases cited in those opinions and others in 3 Texas Jurisprudence, p. 1260.

The remarks of counsel shown in the third bill of exception did not purport to be a comment on the weight of the testimony of Dr. Thayer. It implied that he had "thumbed" or "felt around over plaintiff" in perhaps an improper manner, all in the absence of any evidence to support the insinuation, which was all the more prejudicial when it was coupled with the suggested personal application to the wives or mothers of the jurors; and was improper. Indemnity Insurance Co. v. Harris (Tex. Civ. App.) 53 S.W.(2d) 631; Humble Oil & Ref. Co. v. Butler (Tex. Civ. App.) 46 S.W.(2d) 1043, 1045.

The further argument of counsel for plaintiff addressed to the jury, "Would you go through with what that poor woman has for $2,700?" was improper; the same being in effect an appeal for the jury to assess such damages as they might desire to be awarded to them in the event they had sustained such an injury. Dallas Ry. & Terminal Co. v. Moore (Tex. Civ. App.) 52 S.W.(2d) 104; Dallas Ry. & Terminal Co. v. Curtis (Tex. Civ. App.) 53 S.W.(2d) 85.

There was further error in the instruction of the court that the jury might include in their allowance of damages for plaintiff's injuries an item to cover hospital and doctors' bills, in the absence of any evidence to show that the amount of such expenses claimed was reasonable. 13 Texas Jurisprudence, pp. 189 and 468.

No reversible error is shown in the refusal of special issues requested by the defendant submitting for the jury's determination whether certain groups of facts pleaded by the defendant constituted contributory negligence on the part of plaintiff and her son, since defendant waived that right by requesting an issue submitting contributory negligence in general terms without specifying those particular facts; and the court gave an instruction substantially the same as the one requested.

For the errors indicated, the judgment is reversed, and the cause is remanded.